LAWSON, J.
Kevin McDonald, an indigent defendant, timely appeals his conviction for simple child abuse of E.M.,[1] arguing that the trial court abused its discretion by failing to appoint, at the State’s expense, an out-of-state expert to review the case and testify on his behalf at an admittedly high rate of $10,000 per day. The State’s theory at trial was that McDonald severely injured E.M. by shaking the child; and, the State set about to prove its case almost exclusively with expert testimony. This is typical of “shaken baby syndrome” cases. See, e.g., Keith Findley, Patrick Barnes, M.D., David Moran & Carrie Sperling, Oklahoma City University Law Review Summer 2012 Symposium Examining Shaken Baby Syndrome Convictions In Light Of New Medical Scientific Research, 37 Okla. City U.L.Rev. 219, 223 (2012) (“Interestingly, this is one area in the law where the science is used to prove all elements of the crime. In many cases it comes down to science and nothing more than that.”). And, it appears that in the relevant scientific community there are some experts who question the hypotheses underlying opinions similar to those presented by the State from its four experts in this case. Id.; see also Edward J. Imwinkelried, Shaken Baby Syndrome: A Genuine Battle of the Scientific (And Non^Scientific) Experts, 46 No. 1 Crim. Law Bulletin ART 6 (2010) (“Although at one time most members of the medical community regarded shaken baby syndrome as a truism, the research on the subject has been evolving. As we shall now see, research conducted since Caffey’s 1974 article has triggered a fierce debate, especially over the third proposition underlying the syndrome.”) *916 (footnotes excluded); Richard M. Hirshberg, M.D., Reflections on the Syndrome of the “Shaken Baby”, 29 Med. & L. 103, 118 (2010) (“It should ... be recognized that a definitive understanding of the presumptive biomechanical, neurochemical and pathological mechanisms explaining the findings in the ‘shaken baby’ remain in the realm of ‘unsettled science.’ ”).
In this case, McDonald moved for the appointment of board-certified neurosurgeon Ronald Uscinski, who the defense expected to opine that shaken baby syndrome rests on “flawed science,” and to testify to innocent medical explanations for E.M.’s injuries. A representative of the Justice Administrative Commission (“JAC”) appeared in opposition to the request, but confirmed that the JAC was not aware of a less expensive in-state expert whose testimony could be expected to aid McDonald’s defense in this fashion. The State has offered nothing more than argument to contest McDonald’s position that the science it relied upon to secure a conviction is unsettled or that there are equally qualified experts who disagree with the positions taken by its experts. Yet, the State argues that due process was satisfied in this case when it offered to pay for the services of a local expert whose opinions would mirror the opinions held by its experts.
“An indigent defendant’s right to the assistance of an expert at state expense is rooted in the Fourteenth Amendment’s guarantee of fundamental fairness and the principle that an indigent defendant must be given a fair opportunity to present a defense.” 16C C.J.S. Constitutional Law § 1626 (footnotes and citations omitted). “In determining whether the provision of an expert witness is required, it is appropriate to consider the effect on the defendant’s private interest in the accuracy of the trial if the requested service is not provided, the burden on the government’s interest if the service is provided, and the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided.” Id. Part of the unique problem here is that the burden on the government is extremely high due to the high cost projection for the desired expert. On this record, however, we find that the risk of error in the proceedings and the corresponding prejudice to the Defendant outweigh the high cost to the State. Given that the State used expert testimony to prove each element of the crime, we find that the trial court abused its discretion by denying McDonald’s request to appoint Dr. Uscinski without exploring other less-expensive options which would have allowed McDonald to pursue what, on this record, appears to have been the only viable defense strategy. See Martin v. State, 455 So.2d 370 (Fla.1984) (applying an abuse of discretion standard to a trial court’s decision on the appointment of experts for an indigent defendant); see also San Martin v. State, 705 So.2d 1337 (Fla.1997) (applying two-part test to this abuse of discretion analysis, focusing on defendant’s particularized showing of a need for the expert requested and prejudice to the defendant if appointment of the expert is denied).
In reaching this conclusion, we have also considered and rejected the State’s argument that any error in denying the appointment of Dr. Uscinski was harmless because his testimony would have ultimately been ruled inadmissible under a Frye test.[2] The trial court vacil *917 lated on this issue, first stating that Dr. Uscinski’s testimony would not be appropriate under Frye, but then later opining that his anticipated testimony “would probably meet the Frye test, or possibly meet the Frye test.” The parties have not submitted any authority demonstrating that the concededly minority view as to the scientific reliability of the hypotheses underlying shaken baby syndrome testimony have been “Frye tested” in any court. Until that happens we do not see how a defendant could pursue this defense without the appointment of an expert who can present evidence at a Frye hearing. In our view, and on this record, it would not meet the requirements of due process to deny McDonald the expert he needs to attempt to pursue his defense, at least through a Frye hearing.
Accordingly, we reverse the judgment and sentence and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
PALMER and JACOBUS, JJ., concur.

. § 827.03(l)(a), Fla. Stat. (2008).

. Under Frye v. United States, 293 F. 1013 (D.C.Cir.1923), “[t]he proponent of the evidence bears the burden of establishing by a preponderance of the evidence the general acceptance of the underlying scientific principles and methodology.” Marsh v. Valyou, *917 977 So.2d 543, 548 (Fla.2007) (quoting Castillo v. E.I. Du Pont De Nemours & Co., Inc., 854 So.2d 1264, 1268 (Fla.2003)). "By definition, the Frye standard only applies when an expert attempts to render an opinion that is based upon new or novel scientific techniques." Id. (emphasis in original) (quoting U.S. Sugar Corp. v. Henson, 823 So.2d 104, 109 (Fla.2002)). Therefore, Frye is inapplicable in the "vast majority” of cases. Id.